UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

MARTHA CARLSON,

        Plaintiff,

v.                                Case No. 26-19

WISCONSIN DEPARTMENT OF ADMINISTRATION,
DIVISION OF HEARINGS AND APPEALS,

        Defendant.

---

## COMPLAINT

---

NOW COMES Plaintiff, Martha Carlson, through her attorneys, Alan C. Olson & Associates, S.C., by Alan C. Olson, and, as and for a Complaint against Defendant, Wisconsin Department of Administration, Division of Hearings and Appeals, alleges as follows:

### NATURE OF CASE

1. Plaintiff, Martha Carlson alleges that Defendant, Wisconsin Department of Administration, Division of Hearings and Appeals, violated the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Civil Rights Act of 1991, [42 U.S.C. § 2000, *et seq.*], and the ADA Amendments Act of 2008 [42 U.S.C. § 12101, *et seq.*], by refusing to reasonably accommodate Carlson's disability, and discriminating against her by disciplining her, harassing her, refusing to allow her to return to work from a medical leave which resulted in her using her sick time, and by paying her less because of disability. Defendant further retaliated against Carlson by disciplining her because she opposed discrimination in the workplace and for filing a Wisconsin Fair Employment Act ("WFEA") complaint, number CR202102121, with the Wisconsin Equal Rights Division on September 21, 2021.

## JURISDICTION AND VENUE

2. Jurisdiction over Carlson's claims under the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Civil Rights Act of 1991, [42 U.S.C. § 2000, *et seq.*], and the ADA Amendments Act of 2008 [42 U.S.C. § 12101, *et seq.*], is conferred on this Court by 28 U.S.C. § 1331.

3. The Western District of Wisconsin is the proper federal venue for this action pursuant to 28 U.S.C. § 1391, in that Defendant operates within the Western District and the unlawful actions occurred in the Western District.

## CONDITIONS PRECEDENT

4. All conditions precedent to this action within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## JURY DEMAND

5. Carlson demands that her case be tried to a jury of her peers.

## PARTIES

6. Plaintiff, Carlson, is an adult citizen of the United States, residing at 29622 Clover Lane, Waterford, WI 53185.

7. Defendant, Wisconsin Department of Administration ("DOA"), Division of Hearings and Appeals ("DHA") is organized and existing under the laws of the State of Wisconsin and maintains offices at 4822 Madison Yards Way, Ste. 5, Madison, WI 53705.

## OPERATIVE FACTS

8. The DHA is a quasi-judicial, independent entity created to conduct impartial and independent hearings that serve customer agencies and the citizens of Wisconsin.

9. Carlson has worked for Defendant since April 2013, as a Probation and Parole Administrative Law Judge ("ALJ"). She conducts quasi-judicial/administrative hearings, prehearings, and settlement conferences.

10. In Carlson's position, she issues decisions that make findings of fact, conclusions of law and orders, rules on procedural motions, manages a full caseload with self-direction, and maintains records for appeal purposes.

11. Carlson's disabilities are long-COVID-19, back pain, migraines, major depression, and generalized anxiety disorder.

12. Carlson's disabilities impair her major life activities including, but not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

13. Carlson's disabilities affect her major bodily functions, including but not limited to, functions of the immune system, neurological, and brain functions.

14. Carlson's disabilities do not prevent her from performing the essential functions of her job with reasonable accommodation.

15. Carlson took a medical leave from November 9 to November 29, 2021, because of her disabilities.

16. On December 20, 2021, Carlson provided Defendant with her doctor's medical verification of her need for an accommodation and renewed her request to work remotely.

17. On March 5, 2022, Carlson's doctor sent Defendant detailed explanations to support her accommodation request to work remotely and to communicate with management via Microsoft Teams, email, and phone.

18. Defendant allowed Carlson to work from home for a limited time, but in August 2022, had her return to work from the office.

19. On July 27, 2022, Carlson applied for intermittent leave under the Family and Medical Leave Act ("FMLA") for up to three days a week, because of Defendant's refusal to accommodate her.

20. Defendant's Assistant Division Administrator of the Division of Hearings and Appeals, Eric DeFort ("DeFort"), began to harass Carlson by questioning her FMLA leaves and medical symptoms.

21. From September 30 through October 3, 2022, DeFort emailed Carlson, "Is this an FMLA related absence for a flare-up, or is it a pre-scheduled medical appointment?" "What is the specific reason for your absence?" and "When did you first learn you would need to be absent for work?" Additionally, DeFort threatened to discipline Carlson if she did not answer his questions.

22. Carlson forwarded DeFort's emails to Human Resources ("HR") Coordinator, Jessica Catlin ("Catlin"), expressing that she believed his questions were inappropriate. Catlin informed Carlson that DeFort's questions were appropriate.

23. On October 17, 2022, Defendant's HR employee, Deb Helser ("Helser"), and DeFort informed Carlson during a fact-finding hearing that she had not followed call-in procedures for her absence on September 30, 2022. On the same day, Defendant issued Carlson a non-disciplinary letter of expectation for not answering DeFort's questions regarding her medical leave. The letter falsely claimed that Carlson made misleading and inaccurate statements and demonstrated a lack of respect and courtesy.

4

24. On March 24, 2023, Carlson provided a doctor's note to Defendant recommending that she "work from home until further evaluation."

25. On April 5, 2023, DHA denied Carlson's accommodation request.

26. Beginning in April 2023 and through the present time, DeFort requires Carlson to attend weekly meetings for alleged performance issues, in retaliation for her complaint against him to HR.

27. DeFort does not conduct weekly meetings with the lower performing non-disabled ALJs.

28. On May 1, 2023, Carlson submitted to Defendant another request to work from home full-time so she could take breaks as needed, administer medication, and avoid migraine triggers due to long-COVID-19. She indicated that the symptoms impacted her daily life activities such as sleep, stamina, attention and concentration, memorizing, remembering, and communicating.

29. Defendant did not give Carlson an office with a window until July of 2023, and the office window faced a construction site so she was constantly exposed to loud noises. Carlson was also required to walk through Defendant's common areas that have very bright lights that triggered her migraines.

30. On July 12, 2023, Carlson's doctor filled out another questionnaire requested by HR. The questionnaire recommended that Carlson be allowed to work remotely and to have an advocate present during her meetings with DeFort.

31. Defendant failed to address Carlson's request of needing breaks throughout the day, and informed her that the request for an advocate during meetings with management is outside the request for accommodation process.

32. On August 2, 2023, Defendant informed Carlson that her accommodation request was denied. Catlin noted in the denial letter, that she would continue to negotiate on her behalf regarding the request for regular breaks, but failed to do so.

33. On August 3, 2023, Carlson suffered an episode of Transient Global Amnesia ("TGA") and was hospitalized. Defendant attempted to prevent Carlson from returning to work for concerns about her "competency" despite her providing medical notes that she was permitted to return to work. As a result, Defendant forced Carlson to burn her accrued sick time.

34. In August of 2023, Carlson e-mailed the DOA Secretary expressing her concerns about the hostile work environment. No one replied to Carlson.

35. In October of 2023, Carlson e-mailed the DOA Secretary again expressing her concerns about the hostile work environment. No one replied to Carlson.

36. On October 26, 2023, Defendant had a chemical spill that caused a strong smell that traveled through the vents, which triggered Carlson's migraines.

37. On November 3, 2023, Carlson submitted another doctor's note recommending that she be allowed to work remotely full-time due to her long-COVID-19 diagnosis.

38. On November 9, 2023, an employee burned incense or a candle, which triggered Carlson's migraines.

39. Defendant pays Carlson less compared to other workers in the same position. During the relevant time period, Carlson's wage was $47.77 while ALJ, Christine Hansen ("Hansen"), who began her employment with Defendant in May of 2018, has an hourly wage of $48.09; ALJ, Laura Sette-Cunningham ("Cunningham"), who began her employment with Defendant in June of 2018, has an hourly wage of $48.09; and, ALJ, Jessica Bellenger ("Ballenger"), who began her employment in February of 2021, has an hourly wage of$47.77.

40. On January 30, 2024, Defendant approved Carlson's request to work full-time remotely for a six-month period.

41. Carlson filed her Discrimination Complaint with the Wisconsin Department of Workforce Development, Equal Rights Division, and was issued an Initial Determination finding probable cause to believe Defendant refused to reasonably accommodate a disability; discriminated against Carlson by disciplining her, harassing her, and refusing to allow her to return from medical leave because of disability and because she opposed discrimination in the workplace and filing a complaint with the Division; and discriminated against Carlson in compensation because of disability.

42. Defendant discriminated against Carlson on disability and retaliated against her for opposing discrimination and participating in a legal proceeding against Defendant regarding discrimination in the workplace.

## FIRST COUNT
## AMERICANS WITH DISABILITIES ACT
## DISABILITY DISCRIMINATION

43. As and for a first Count, Carlson re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

44. The allegations more particularly described above constituted violations of the ADA, the Civil Rights Act of 1991, and the ADA Amendments Act of 2008, when Defendant routinely targeted and treated Carlson less favorably than comparably situated, non-disabled employees, causing her to suffer compensatory damages for losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

## SECOND COUNT
## AMERICANS WITH DISABILITIES ACT
## RETALIATION

45. As and for a second Count, Carlson re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

46. The allegations more particularly described above constituted violations of the ADA, the Civil Rights Act of 1991, and the ADA Amendments Act of 2008, when Defendant targeted Carlson for engaging in protected activity related to her disability, causing her to suffer compensatory damages for losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

Wherefore Plaintiff, Martha Carlson, demands that judgment be entered and Defendant ordered to provide the following remedies:

    A.    Compensatory damages for losses of wages, benefits, and expenses;

    B.    Costs, disbursements, prejudgment interest, actual attorney's fees and expert witness fees incurred in prosecuting these claims, together with interest on said fees;

    C.    Damages for emotional distress, pain and suffering;

    D.    Punitive damages to punish and deter Defendant from engaging in the alleged unlawful conduct now and in the future;

    E.    Injunctive relief to force Defendant to cease and desist the alleged unlawful conduct; and

    E.    Such other relief as the Court deems just and equitable.

Dated this 8th day of January, 2026.

*Electronically signed by Alan C. Olson*
Alan C. Olson, Bar Number: 1008953
Nicholas O. Yurk, SBN 1095278

Attorneys for Plaintiff
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI  53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: AOlson@EmployeeAdvocates.com